**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **KENNITH W. MONTGOMERY**<br>**D.O.C. # 123966** | : | **DOCKET NO. 2:18-cv-0067**<br>**SECTION P** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **JERRY GOODWIN** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Kennith W. Montgomery, who is proceeding pro se in this matter. Montgomery is an inmate in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at David Wade Correctional Center in Homer, Louisiana. Jerry Goodwin, warden of that facility and respondent in this matter, opposes the petition.

This petition is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the petition for writ of habeas corpus be **DENIED** and **DISMISSED WITH PREJUDICE**.

# I.
## BACKGROUND

### A. Conviction

Montgomery was indicted in the Fourteenth Judicial District, Calcasieu Parish, Louisiana, on September 6, 2012, on two counts of distribution of a Schedule II controlled dangerous substance, a violation of Louisiana Revised Statute § 40:967(A)(1). Doc. 21, att. 2, pp. 20–21. He proceeded to trial by jury and was found guilty as charged on January 11, 2013. *Id.* at 159, 161. He was sentenced on April 1, 2013, to concurrent thirty year terms of imprisonment. Doc. 21, att. 3, p. 218. The state then filed a habitual offender bill. *Id.* at 219. At a hearing on July 26, 2013, Montgomery was determined to be a second felony offender. *Id.* at 234. Despite the habitual offender adjudication, the court maintained the previous sentence of concurrent 30 year terms. *Id.* at 242–43.

### B. Direct Appeal

Montgomery sought review in the Louisiana Third Circuit Court of Appeal of both his conviction and second felony offender adjudication. There he raised the following assignments of error:

1. The trial court erred in denying his motion for recusal of the trial judge.

2. The trial court erred in denying his pro se motion to suppress without a hearing.

3. Montgomery was denied due process because the state failed to provide him with full discovery until the day of trial.

4. The method of jury selection in Calcasieu Parish is unconstitutional because it systematically excludes African-Americans from jury duty.

5. The prosecution failed to prove that he had committed the prior felonies.

*State v. Montgomery* ("Montgomery I"), 158 So.3d 87 (La. Ct. App. 3d Cir. 2014); *State v. Montgomery* ("Montgomery II"), 158 So.3d 78 (La. Ct. App. 3d Cir. 2014). The Third Circuit

reviewed all claims on the merits and affirmed his conviction and sentence. *Montgomery I*, 158 So.3d at 89–96; *Montgomery II*, 158 So.3d at 79–82. Montgomery then sought review in the Louisiana Supreme Court, which denied writs on both matters on November 16, 2015. *State v. Montgomery*, 184 So.3d 23 (La. 2015). He did not file a petition for writ of certiorari in the United States Supreme Court. Doc. 1, p. 3.

### C. State Collateral Review

Montgomery filed a pro se application for post-conviction relief in the trial court on December 2, 2015.[1] Doc. 21, att. 6, pp. 177–242. There he raised the following claims: (1) he was denied due process by the state's failure to disclose the existence of a videotape of the alleged drug buy, and (2) he was denied his constitutional right to self-representation. *Id.* The trial court denied relief under Article 930.4 of the Louisiana Code of Criminal Procedure, which deals with repetitive applications for post-conviction relief. Doc. 21, att. 7, p. 22. Montgomery sought review in the Louisiana Third Circuit Court of Appeal, which found no error in the trial court's ruling and denied the writ. *Id.* at 29. Montgomery then sought review in the Louisiana Supreme Court, which summarily denied same on November 17, 2017. *Id.* at 31–32.

### D. Federal Habeas Petition

The instant petition was filed in this court on January 9, 2018. Doc. 1. Here Montgomery raises the following claims for relief:

1. The trial court erred in allowing the state to introduce a video tape that it failed to turn over to the defense until just before the start of trial.

2. The trial court erred in denying Montgomery's motion to recuse.

3. The trial court erred in allowing the case to proceed to trial without affording Montgomery adequate opportunity to prepare.

---

[1] For pro se filings by an inmate, this court uses the date that the pleading was surrendered for mailing, if available, as the date of filing. If that date is not provided, we look to the date that the pleading was received by the court.

4. The trial court erred in denying Montgomery's motion for self-representation.

5. The trial court erred in allowing the state to produce discovery at the "eleventh hour," depriving Montgomery of adequate opportunity to prepare his defense.

6. Montgomery received ineffective assistance from trial counsel.

7. The trial court erred in denying the petitioner's motion to suppress without a hearing.

*Id.*; doc. 1, att. 2. He also alleges that the Third Circuit erred in not addressing certain issues. We review that allegation in determining the standard of review for those claims rather than as a separate basis for relief. Montgomery subsequently amended his complaint in order to dismiss Claim 6. Doc. 8. The respondent opposes the petition. Doc. 21.

## II.
### STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. *Id.* The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. *Id.* at § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and

the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. Exhaustion and Procedural Default

Exhaustion and procedural default are both affirmative defenses that may be considered waived if not asserted in the respondent's responsive pleadings. *E.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any assertions by respondent under these doctrines, in addition to conducting our own review.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require that a petitioner seeking federal habeas corpus relief exhaust all available state court remedies before filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir.

1987). The exhaustion requirement is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, based on the same general legal theories and factual allegations that he raises in his § 2254 petition.

### 2. *Procedural Default*

When a petitioner's claim is dismissed by the state court based on state law grounds, and those grounds are independent of the federal question and adequate to support the judgment, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or that review is necessary "to correct a fundamental miscarriage of justice." *Coleman v. Thompson*, 111 S.Ct. 2546, 2553–54, 2564 (1991) (internal quotations omitted). Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). This is not a jurisdictional matter, but instead a doctrine "grounded in concerns of comity and federalism." *Trest v. Cain*, 118 S.Ct. 478, 480 (1997). The grounds for traditional procedural default must be based

on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989). To serve as adequate grounds for a federally cognizable default, the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *E.g.*, *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998). That statute provides that a writ of habeas corpus shall not be granted unless the state court's adjudication resulted in a decision that was (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d). Where a habeas court is faced with an unexplained decision on the merits, it "looks through" that decision to the last related state court decision that provides a relevant rationale and presumes that the unexplained decision adopts the same reasoning. The respondent may rebut the presumption by showing that the unexplained decision most likely relied on different grounds than the reasoned decision below. *Wilson v. Sellers*, 138 S.Ct. 1188 (2018). Our review, however, ultimately encompasses "only a state court's decision, and not the written opinion explaining that decision." *Maldonado v. Thaler*, 625 F.3d 229, 239 (5th Cir. 2010) (internal quotations omitted); *see also Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.") Even if the state court issues a summary denial of the claim, "the habeas petitioner's burden still must be met be showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. The petitioner must demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786–87. A decision is only contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary result]." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted). As the Court recently emphasized, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' . . . Nor, of course, do state-court decisions, treatises, or law review articles." *Kernan v. Cuero*, 138 S.Ct. 4, 9 (2017) (internal citation omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies only to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination. Instead, he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Instead, a presumption of correctness attaches to the state court's factual determinations and the petitioner must rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III.
### LEGAL ANALYSIS

### A. *Timeliness*

Montgomery's conviction became final on February 15, 2016, when his time for seeking review in the United States Supreme Court expired. Sup. Ct. R. 13. No time accrued against § 2244(d)'s one year time limit before he filed his application for post-conviction relief in the trial court on December 2, 2015. After this application was filed, the time limit remained tolled until the Louisiana Supreme Court's decision on November 17, 2017. Therefore only **53** days accrued against the one-year limit before this petition was filed on January 9, 2018, and the matter is timely.

### B. *Exhaustion and Procedural Default*

The respondent agrees that all of petitioner's claims above are exhausted and susceptible to federal habeas review. Doc. 21, att. 1, p. 17. We therefore consider all of the claims on the merits below.

### C. *Merits Consideration*

#### 1. *Admission of late-produced video tape evidence*

Montgomery first claims that he was denied due process when the trial court allowed the state to enter a video tape into evidence, despite allegedly withholding this video tape from the defense until shortly before trial. Doc. 1, att. 2, pp. 3–10. He complains that by withholding this information, the state prevented him from timely uncovering the identity of the purchaser. *Id.* The Third Circuit only addressed this claim insofar as it related to the state's failure to disclose the identity of the individual who made purchases from him and that person's criminal record, which the state did not disclose until the beginning of trial. *Montgomery I*, 158 So.3d at 94. It noted that both issues were directly addressed by the Louisiana Code of Criminal Procedure, which states that a defendant's request for discovery does not obligate the prosecution to provide a witness list

-9-

and that the prosecution is "not . . . required to disclose inducements or records of arrests and convictions [of witnesses] until the commencement of trial."[2] *Id.* (citing La. C. Cr. P. arts. 716, 717).

Habeas relief only lies for discovery errors where the petitioner can show an abuse of discretion resulting in prejudice to his substantial rights. Here Montgomery, who was attempting to represent himself at trial, alleges that he was only alerted to the existence of the video tape shortly before trial and only given fifteen minutes to view that tape. As the respondent shows, however, the state disclosed the existence of both audio and video tape of the crime in the search warrant affidavit attached to its discovery responses on December 11, 2012, a month before trial began. Doc. 21, att. 2, pp. 62, 74. At sentencing Montgomery's attorney also stated that she had only conveyed the discovery to Montgomery days before trial began but had advised him to seek a continuance on that basis. She stated that Montgomery nonetheless insisted on going to trial. Doc. 21, att. 3, pp. 214–15. The record reflects no motion for continuance of the January 2013 trial date by the defense. It thus appears that the state made its required disclosures and Montgomery did not protest that he needed more time to review the evidence once it was in his hands. Accordingly, Montgomery can show no error, let alone abuse of discretion, in the trial court's decision to admit the video evidence.

Because Montgomery claims that delayed disclosure of the videotape and the purchaser's identification and criminal history resulted in a denial of due process, we also review this claim de novo under *Brady v. Maryland*, 83 S.Ct. 1194 (1963). Under *Brady*, the state violates a defendant's right to due process when it withholds "evidence favorable to an accused . . . where th[at] evidence

---

[2] Although Montgomery also raised this claim on post-conviction relief, it was denied there as repetitive under Article 930.4 of the Louisiana Code of Criminal Procedure. The effect of that decision on habeas review is to cause this court to look through the post-conviction proceedings to the decisions on direct appeal, supra. *Bennett v. Whitley*, 41 F.3d 1581, 1582–83 (5th Cir. 1995).

is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 1196–97.

To prevail on a *Brady* violation claim, a defendant must first show that the prosecution suppressed evidence, and the evidence was favorable to the defense. *Cordova v. Collins*, 953 F.2d 167, 171 (5th Cir. 1992) (citing *Brady*, 83 S.Ct. at 1196–97). For a claim based on delayed disclosure rather than failure to disclose, the defendant must show that the delay was so significant that he was not able to put the evidence to effective use at trial. *United States v. Walter*, 351 F.3d 159, 169 (5th Cir. 2003). Furthermore, as the Fifth Circuit has noted, where disclosure is delayed until trial the defense may move for a recess or continuance in order to prepare. *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir. 1994).

Evidence is favorable to the defense when, "if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 105 S.Ct. 3375, 3380 (1985). The prosecution's duty to disclose exculpatory evidence applies even where no request is made by the defense, and the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Agurs*, 96 S.Ct. 2392, 2399 (1976); *Kyles v. Whitley*, 115 S.Ct. 1555, 1567–68 (1995). The duty to disclose also extends to impeachment evidence. *Bagley*, 105 S.Ct. at 3380–81.

There is no *Brady* violation, however, unless the suppressed evidence is material. *Agurs*, 96 S.Ct. at 2400. In a *Brady* claim, materiality is "generally the most difficult [element] to prove." *Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008). Evidence is material "only if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 105 S.Ct. at 3383. In assessing materiality, the court should

consider the cumulative effect of all suppressed evidence rather than proceeding item by item. *Banks v. Thaler*, 583 F.3d 295, 311 (5th Cir. 2009) (citing *Kyles*, 115 S.Ct. at 1567).

Here the state had disclosed the existence of the tape to the defense in advance of trial. It did delay until the beginning of trial, as the Third Circuit noted, in disclosing the identity and criminal background of the purchaser. Even if Montgomery could show that these delays amounted to suppression under *Brady*, however, he could not show sufficient prejudice. Instead, he merely complains of unfair surprise when he was confronted with video evidence of his crimes. Doc. 1, att. 2, pp. 3–7. He also fails to show that he was unable to put the identity of his purchaser to use because of the delay. Furthermore, his own failure to seek a continuance is evidence of the lack of materiality of this discovery to his defense. Accordingly, he has not shown a constitutional violation and is not entitled to habeas relief under this claim.

### 2. *Denial of motion to recuse*

Montgomery next complains that he was denied due process when the trial court denied his motion to recuse the Honorable Clayton Davis from his case, on the basis of "bad blood" between the two men, a pending lawsuit, and numerous complaints to the Louisiana Judiciary Commission filed by Montgomery against Davis. Doc. 1, att. 2, pp. 10–11. He also incorporates the reasons referenced in Judge Sylvia Cooks's dissenting opinion on his direct appeal – namely, that Judge Davis should have at least referred the recusal motion to another judge. *Montgomery I*, 158 So.3d at 96 (Cooks, J., dissenting).

Prior to trial Montgomery filed a pro se motion to recuse Judge Davis from his case. Doc. 21, att. 2, pp. 26–31. Judge Davis denied the motion on October 18, 2012, stating that Montgomery "fails to allege a valid ground for recusation, as required under Louisiana Code of Criminal Procedure Article 671, supported by conclusive facts." *Id.* at 55. Montgomery raised the denial as

an assignment of error on direct appeal and the Third Circuit denied relief, finding that Montgomery had not shown any basis for his motion and in particular had failed to show that the trial judge was biased against him. *Montgomery I*, 158 So.3d at 89–91.

In order to show a right to habeas relief based on denial of a motion to recuse, the petitioner must demonstrate that the denial resulted in a due process violation. *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008); *see Aetna Life Ins. Co. v. Lavoie*, 106 S.Ct. 1580, 1584–85 (1986) (distinguishing between general allegations of judicial bias and those raising due process concerns). A petitioner may show such a violation based on the judge's actual or presumptive bias. *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008). In proving actual bias, the petitioner must show that the judge had a prejudiced disposition in his own case. *Bracy v. Gramley*, 117 S.Ct. 1793, 1799 (1997). To this end he should present actions demonstrating the judge's animus toward him, beyond mere errors in the judge's ruling. *See Cubas v. Thaler*, 487 Fed. App'x 128, 131 (5th Cir. 2012).

Such proof is difficult to marshal and so almost every successful bias case before the Supreme Court has been based on presumptive bias. *Buntion*, 524 F.3d at 672. "Presumptive bias occurs when a judge may not actually be biased, but has the appearance of bias such that 'the probability of actual bias . . . is too high to be constitutionally tolerable.'" *Richardson*, 537 F.3d at 475 (quoting *Withrow v. Larkin*, 95 S.Ct. 1456, 1464 (1975)). It can be shown on the following bases:

> (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints.

*Buntion*, 524 F.3d at 672 (quoting *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)). "[I]t is *only clearly established* by Supreme Court precedent that presumptive bias exists in" these three circumstances. *Richardson*, 537 F.3d at 476 (emphasis in original). Moreover, the petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators" in order to show bias. *Dung Quoc Pham v. Blaylock*, 712 Fed. App'x 360, 364 (5th Cir. 2017) (quoting *Withrow*, 95 S.Ct. at 1464).

Under federal law, a judge is not required to refer a recusal motion to another judge. *Henderson v. Dep't of Pub. Safety and Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990). Under Louisiana law, a judge is only required to refer such a motion to another judge if the motion sets out valid grounds for recusal. La. C. Cr. P. art. 674. "Where . . . the motion is based on mere conclusory allegations, the trial court does not err in refusing to refer the motion to another judge for hearing." *State v. Beavers*, 394 So.2d 1218, 1229 (La. 1981).

As noted above, Montgomery bases his bias claim on his history "bad blood" with Judge Davis and his ongoing judicial complaints and lawsuit against him. However, he does not provide any direct evidence of bias on the judge's part. Accordingly, his claim is one of presumptive bias and appears to be based on allegations that Judge Davis suffered "personal abuse or criticism" from Montgomery.

Montgomery alleges that he filed multiple judicial conduct complaints and a lawsuit against Judge Davis. The record shows several of Montgomery's complaints and pro se recusal motions, dated from October 2012 and referencing other motions as far back as 2009. *See* doc. 21, att. 2, pp. 26–38. The complaints in the record only show general grievances about rulings in his case and do not contain the kinds of attacks or accusations that we would find sufficient to undermine a judge's impartiality. Likewise, Montgomery's civil suit against Judge Davis and

several others contained only general allegations of constitutional violations. *Montgomery v. Lake Charles et al.*, No. 2:10-cv-1297, doc. 1, pp. 8–9 (W.D. La. Aug. 17, 2011). This suit had already been dismissed for failure to state a claim on which relief may be granted before Montgomery was even indicted on the distribution charges.[3] *Id.* at doc. 38. Montgomery fails to show that his "personal abuse or criticism" was sufficient to overcome Davis's presumption of honesty and integrity or that Davis acted improperly by handling the motion himself. He therefore demonstrates no error to the state court's ruling, and is not entitled to habeas relief under this claim.

### 3. *Failing to allow petitioner time to prepare*

Montgomery next complains that the trial court erred in allowing the case to proceed to trial without giving him the opportunity to prepare, and that the appeals court erred by not addressing the issue on appeal. Doc. 1, att. 2, pp. 12–14.

In his pro se appellate brief, Montgomery contended that the trial court deprived him of due process and the opportunity to present evidence by moving his trial date from February 22, 2013, to January 10, 2013, without prior notice. Doc. 21, att. 6, pp. 153–54. The Third Circuit did not address this claim in its ruling on Montgomery's direct appeal. *Montgomery I*, 158 So.3d at 89–96. Accordingly, we review the claim de novo.

As the respondent notes, Montgomery's trial counsel indicated at sentencing that the trial date was pushed up because Montgomery had asserted his speedy trial rights. Doc. 21, att. 3, p. 214. She stated that she had not known of the change in schedule and had only conveyed some of the discovery to Montgomery days before trial began, but had advised him to seek a continuance when she realized how close the trial date was. *Id.* at 214–15. She noted that Montgomery nonetheless insisted on going to trial. *Id.* The record shows no motion for continuance of the

---

[3] Montgomery filed another suit against Davis and others on April 25, 2013, six months after Davis denied his recusal motion. *Montgomery v. Louisiana*, No. 2:13-cv-0884 (W.D. La. Jul. 13, 2014).

January 2013 trial date by the defense. To the extent that Montgomery was either attempting to act as his own counsel, below, or was still relying on representation of trial counsel, the record indicates that he did have adequate notice of the new trial date to seek a continuance but did not desire extra preparation time. He therefore shows no violation of due process by the trial court, and no right to habeas relief under this claim.

### 4. *Denial of right to self-representation*

The petitioner next alleges that the state district court denied his right to self-representation under *Faretta v. California*, 95 S.Ct. 2525 (1975). He raised this claim in his application for post-conviction relief, and that application was denied as repetitive under Article 930.4 of the Louisiana Code of Criminal Procedure. Accordingly, as described supra under note 2, this court should look through the ruling on post-conviction relief to the handling of this claim on direct appeal. Montgomery complained in his pro se appellate brief that he was not provided with discovery and of the appointment of trial counsel to assist him. Doc. 21, att. 6, pp. 150, 156–57. The appellate court, however, only addressed these allegations in terms of the late provision of discovery. *See Montgomery I*, 158 So.3d at 94. Accordingly, we find the *Faretta* claim exhausted in but unaddressed by the state courts and review it de novo.

Under *Faretta*, a defendant has a Sixth Amendment right to self-representation. 95 S.Ct. at 2540–41. Once this right has been asserted, the defendant "must be allowed to control the organization and content of his own defense . . . ." *Lefevre v. Cain*, 586 F.3d 349, 353 (5th Cir. 2009) (quoting *McKaskle v. Wiggins*, 104 S.Ct. 944, 949 (1984)) (internal quotes omitted). A trial court may still appoint standby counsel to assist a pro se defendant. *Id.* However, the right to self-representation is denied if such an appointment interferes with the defendant's actual control of his case or destroys the jury's perception that the defendant is representing himself. *McKaskle*, 104

-16-

S.Ct. at 951. Because a defendant's exercise of his right to self-representation usually increases the likelihood of an unfavorable trial outcome, its denial is not subject to harmless error review. *Id.* at 950 n. 8. Instead, denial of the right to self-representation is a structural error requiring automatic reversal. *Batchelor v. Cain*, 682 F.3d 400, 405–06 (5th Cir. 2012).

In order to assert his right to self-representation, a defendant must knowingly and voluntarily waive his right to counsel under the Sixth Amendment. *Faretta*, 95 S.Ct. at 2541. Such a waiver is generally ineffective if the trial court does not engage in a colloquy with the defendant before trial, in which it explains to him the dangers and advantages of self-representation. *Gross v. Cooper*, 312 Fed. App'x 671, 675 (5th Cir. 2009) (citing *Chapman v. United States*, 553 F.2d 886, 892 (5th Cir. 1977)). Once a defendant unequivocally invokes the right to self-representation, it is incumbent on the trial court to hold a *Faretta* hearing and determine whether the defendant's decision is knowing and voluntary. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008); *see Faretta*, 95 S.Ct. at 2541. However, a defendant may waive the right to self-representation through subsequent conduct indicating an abandonment of his request. *McKaskle*, 104 S.Ct at 953; *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982).

The respondent asserts that there was no denial of the right to self-representation because Montgomery "never expressed a clear and unequivocal desire to represent himself with this judge." Doc. 21, att. 1, p. 25. The petitioner contends that he began requesting to represent himself on July 19, 2012, and was granted pro se status by Judge David Ritchie following a *Faretta* hearing. *See* doc. 1, att. 3, p. 35. That hearing relates to district court case number 3009-RC-2012, however, and the hearing took place nearly two months before Montgomery was indicted in this matter under

district court case number 26952-CR-2012.[4] *See* doc. 21, att. 2, p. 10. Montgomery entered a plea of not guilty to the instant charges before Judge Clayton Davis on October 1, 2012, and the Calcasieu Parish Public Defender's Office was appointed to represent him in an advisory capacity. *Id.* at 11.

Catherine Stagg enrolled as his counsel of record on October 15, 2012, but then moved to withdraw the following month. *Id.* at 49, 57. In her motion to withdraw she stated that "the Defendant has consistently stated that he does not want any attorney and wishes to represent himself, and further . . . this Honorable Court previously made a determination that the Defendant is competent to represent himself." *Id.* at 57. Judge Davis denied the motion, however, and indicated that Stagg was to assist Montgomery with his representation. *Id.*

Thus the record does indicate that Montgomery unequivocally asserted his desire for self-representation in this case. To the extent that Judge Davis might have erred by not conducting a separate *Faretta* hearing on that request or by appointing Stagg to "assist," when her role in the case might have encroached on his autonomy in some way, however, Montgomery's subsequent conduct indicates consent to Stagg's role.[5] There is no sign that he ever objected to the court's refusal to let Stagg withdraw, or only accepted her help in a standby capacity. He also made no objection to the substantial assistance Stagg provided at trial, which included arguing motions, making objections, cross-examining witnesses, and making the closing argument. Doc. 21, att. 3, pp. 51–190. He cannot show a violation of his right to self-representation by the court's actions

---

[4] The record does not show what the relationship between the two cases is or what the outcome of 3009-RC-2012 was, though we note that that case also involved at least one drug charge involving a Schedule II narcotic. *See* doc. 1, att. 3, p. 35.

[5] Montgomery complains that his right to self-representation was injured when Stagg, as "implant" counsel, delayed in providing him with discovery and failed to give him notice of a new trial date. Doc. 1, att. 2, pp. 14–15. He has not shown that the trial court had any role in these communications or lack thereof, and these allegations should instead be asserted as a claim of ineffective assistance of counsel. Montgomery raised such a claim in this petition, but voluntarily dismissed it after the court noted that the claim was unexhausted. Docs. 5, 8.

because he had waived that right by accepting Stagg's assistance his case. Accordingly, he is not entitled to habeas relief under this claim.

### 5. *Late production of discovery*

Montgomery next alleges that the trial court erred in allowing the state to produce discovery at the "eleventh hour" and contends that the Third Circuit did not address this claim on appeal. Doc. 1, att. 2, pp. 15–16. The Third Circuit did address this claim and found that discovery was timely produced under the Louisiana Code of Criminal Procedure. *Montgomery I*, 158 So.3d at 94. Nonetheless, Montgomery alleges that the state's "last minute tactics" amounted to a violation of his right to prepare a defense and his right to due process of law. He fails to identify any late-produced discovery other than that handled supra, under Claim 1. For the reasons provided there, he is not entitled to relief.

### 6. *Denial of motion to suppress*

Finally, Montgomery claims that the trial court denied his right to due process by failing to grant him a hearing on his pro se motion to suppress. Doc. 1, att. 2, pp. 18–20. In that motion he sought to suppress video evidence recorded as part of a controlled buy, by an individual sent into his home by law enforcement to make a drug purchase. *See Montgomery I*, 158 So.3d at 91–92. He raised this claim in his direct appeal and the Third Circuit affirmed that, regardless of the lack of an evidentiary hearing, the trial court had correctly concluded that there was no merit to the motion. *Id.*

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Stone v. Powell*, 96 S.Ct. 3037, 3046 (1976). "[W]here there are *facts* in dispute, full and fair

consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir.), cert. denied, 97 S.Ct. 2981 (1977)) (emphasis in original).

In this matter Montgomery's motion to suppress was filed the day of trial and argument was heard before the trial began. Doc. 21, att. 3, pp. 51–57. Montgomery's motion was not based on any dispute about the facts, but instead on his presentation of Fourth Amendment case law. *Id.* He never identified any witnesses he would call or evidence he would submit in support of his motion. Appellate review was made available through the state courts. Furthermore, as noted above, Montgomery declined to seek a continuance despite his claim that he received inadequate notice of the trial date. He cannot show that he was denied the opportunity to litigate his motion to suppress in the state court and therefore cannot use his disagreement with the outcome as a basis for habeas relief.

## IV.
### CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the instant petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal

conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 11th day of July, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE